# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### SEATTLE DIVISION

| | |
|---|---|
| VINCELLE CALICA AND RAYMOND CALICA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREEN DIAMOND RESOURCE COMPANY,<br><br>Defendant. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>Action Filed: May 9, 2024<br>Complaint Served: May 13, 2024 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Green Diamond Resource Company ("Defendant" or "Green Diamond"), hereby removes the action filed by Plaintiffs Vincelle Calica and Raymond Calica ("Plaintiffs"), individually and on behalf of all others similarly situated, in the Superior Court of Washington for King County, Case No. 24-2-10471-2, to the United States District Court for the Western District of Washington, Seattle Division. In support of removal, Green Diamond states as follows:

### I. BACKGROUND

1. On May 9, 2024, Plaintiffs, individually and on behalf all others similarly situated, filed a Class Action Complaint (the "Complaint") against Green Diamond in the Superior Court of Washington for King County, Case No. 24-2-10471-2 (the "State Court Action"). Plaintiffs filed the Complaint as a putative class action.

2. Plaintiffs allege that Green Diamond suffered a cyberattack that affected certain of Green Diamond's computer systems, and that some of its data was accessed by an unauthorized third party in June 2023. (Compl. ¶¶ 4, 14.) Plaintiffs further alleged that the cybercriminals exfiltrated "private information belonging to Plaintiffs and Class members.") (*Id.* ¶ 4.) Plaintiffs allege that they and the Class members "are likely to suffer economic loss and other actual harm for which they are entitled to damages." (*Id.* ¶ 65.)

3. Based on these allegations, Plaintiffs assert two causes of action against Green Diamond: (1) negligence; and (2) violation of the Washington Consumer Protection Act, RCW 19.86.010, *et seq*. (*See generally*, Compl.)

4. Plaintiffs purport to bring these two causes of action on behalf of themselves and a class defined as "All individuals residing in the United States whose personal information was compromised in the data breach disclosed by Green Diamond in April 2024." (*Id.* ¶ 68.)

## II. REMOVAL IS TIMELY

5. Plaintiffs filed this lawsuit on May 9, 2024, and served Green Diamond with a copy of the summons and Complaint on May 13, 2024. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by Green Diamond are attached hereto as exhibits. Specifically, attached to this Notice of Removal are true and correct copies of: (1) the operative Complaint (**Exhibit A**); (2) Summons; (**Exhibit B**); (3) Case Information Cover Sheet (**Exhibit C**); (4) Order Setting Case Schedule (**Exhibit D**); and (5) the docket in the State Court Action (**Exhibit E**).

6. No other pleadings or substantive filings (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

7. This removal is timely because Green Diamond filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

### III. THIS COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA") (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant. *See* 28 U.S.C. § 1332(d).

10. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Green Diamond may remove the State Court Action to federal court under CAFA because this case is (i) pled as a putative class action, (ii) with over 100 proposed putative class members, (iii) that involves a minimal diversity of citizenship among the parties, and (iv) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

**A. The Complaint is pled as a putative class action.**

11. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

12. Plaintiffs seek class certification under Washington Superior Court Civil Rule 23. (*See* Compl. ¶ 71-72; Prayer for Relief.) Thus, the CAFA requirement that the Complaint is pled as a class action is satisfied. *See* 28 U.S.C. § 1332(d)(1)(B).

**B. Plaintiffs allege a putative class with over 100 proposed members.**

13. Plaintiffs allege that cybercriminals "accessed the most sensitive private information of 27,896 individuals." (Compl. ¶ 4; *see also id.* ¶ 17.) Plaintiffs further allege that "[t]he proposed Class consists of at least 27,000 members." (*Id.* ¶ 71.)

14. Accordingly, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

**C. Minimal diversity of citizenship exists.**

15. Under CAFA, federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).

16. <u>Defendant's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (concluding that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or where it has its "nerve center."). "[I]n practice it should normally be the place where the corporation maintains its headquarters[.]" *Id.* at 93.

17. As alleged in the Complaint, Green Diamond is a Washington corporation based in Seattle, Washington. (Compl. ¶ 8.) Thus, Green Diamond is a citizen of Washington.

18. <u>Plaintiffs' Citizenship</u>. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id. See also Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode"). "The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

19. Here, Plaintiffs allege that they are residents, not citizens, of Washington. (Compl. ¶¶ 6-7.) Because domicile, rather than residency, determines citizenship of individuals, it is unclear whether any of the named Plaintiffs are citizens of Washington or another state. Nevertheless, even assuming named Plaintiffs are citizens of Washington, minimal diversity is still met through the putative class's citizenship, as explained in more detail below.

20. *The Putative Class's Citizenship.* Plaintiffs seek to represent the following class of persons: "All individuals residing in the United States whose personal information was compromised in the data breach disclosed by Green Diamond in April 2024." (*Id.* ¶ 68.)

21. Green Diamond has sent notifications of the Data Incident to people with addresses in all fifty states. Though thirty-six percent (36%) of addresses to which notifications were sent are in Washington state, twenty-four percent (24%) of the notification addresses were in California, and nearly eleven percent (11%) of notifications were sent to addresses in Oregon. The remaining notifications were sent across the remaining forty-seven states. Thus, members of the putative class are located in all fifty states, and nearly two-thirds of the class reside outside of Washington and are likely citizens of a state other than Washington.

22. Because Green Diamond and at least one member of the putative class are citizens of different states, CAFA's minimal diversity requirement is met in this case. *See* 28 U.S.C. § 1332(d)(2)(A).

**D. The amount in controversy exceeds the CAFA threshold[1]**

23. The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. *See* 28 U.S.C. § 1332(d)(2).

24. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. REP. NO. 109-14, at 43 (2005)) "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

1  questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89; *see also* 28 U.S.C.
2  § 1446(c)(2)(B).

3      25.    Courts may consider the combined total amount of alleged actual damages and
4  punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)
5  ("Where both actual and punitive damages are recoverable under a complaint each must be
6  considered to the extent claimed in determining jurisdictional amount."). The amount in
7  controversy also includes reasonable attorney's fees, if mandated or allowed by statute or contract.
8  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("Section 1332(a)'s amount-
9  in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys'
10 fees."). Finally, the costs of complying with an injunction may establish the amount in controversy.
11 *See Morales v. Generix Labs, Inc.*, 2010 WL 11595740, at *3 (C.D. Cal. April 19, 2010) *citing In
12 re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("When a plaintiff
13 seeks injunctive relief the amount in controversy may be calculated by assessing the cost to the
14 defendant of complying with the injunction.").

15     26.    Plaintiffs request the following relief, which, aggregated across the putative class of
16 27,000 individuals, places more than $5 million in controversy, exclusive of interests and costs:
17 "monetary relief, including actual and treble damages," ten enumerated forms of "injunctive relief,"
18 and attorneys' fees (Compl., Prayer for Relief).

19     27.    Based on plaintiffs' allegations related to damages and the size of the putative class,
20 these alleged damages easily surpass the $5 million jurisdictional threshold.

21     28.    As way of example, one of the alleged economic damages that Plaintiffs allege they
22 and the class have suffered and will continue to suffer are the "costs associated with purchasing
23 credit monitoring." (Compl. ¶ 65.) Paying for those costs alone would cost many millions of dollars
24 and satisfy the jurisdictional threshold. Three identity-protection agencies—Equifax, LifeLock, and
25 Experian—advertise monthly rates for credit-monitoring services ranging from $9.95 to $24.99.[2]

---

[2] Equifax, available at https://www.equifax.com/, last visited on May 31, 2024; LifeLock by Norton, available at https://lifelock.norton.com/, last visited on May 31, 2024; and Experian, available at https://www.experian.com/protection/identity-theft-and-credit-protection/, last visited on May 31, 2024.

The cost of providing two years of credit-monitoring services (a standard period for providing these services) at $9.95 per month (the cheapest credit-monitoring service) for 27,000 individuals is nearly $6.5 million. And this does not include damages for the other alleged "time and effort" that each putative class member is alleged to have spent.

29. Moreover, both putative class actions filed in federal court seeking to represent the same class and seeking substantially similar damages allege that the amount in controversy exceeds $5 million. (*See Gregorio v. Green Diamond Resource Company*, filed on April 30, 2024 under Case No. 2:24-cv-0596 (W.D. Wa.); *Valentine v. Green Diamond Resource Company*, filed on May 6, 2024 under Case No. 2:24-cv-0620 (W.D. Wa.).)

30. Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages (including statutory treble damages), injunctive relief, or attorneys' fees, which would add even more to the total amount in controversy.

## IV.   RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

31. Nothing in this Notice is intended or should be construed as an express or implied admission by Green Diamond of any fact alleged by Plaintiffs, of the validity or merit of any of Plaintiffs' claims and allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action.

## V.   CONCLUSION

32. Green Diamond removes the State Court Action to the United States District Court for the Western District of Washington based on original jurisdiction under 28 U.S.C. § 1332(d).

33. Promptly after filing this Notice of Removal, Green Diamond will file a copy of it with the clerk of the state court in which this action is pending and will give written notice to counsel for Plaintiffs, as required by 28 U.S.C. § 1446(d).

34. This Notice of Removal is submitted without waiver of any procedural or substantive defense that may be available to Green Diamond and without admitting any of the allegations contained within the Complaint.

Dated: June 3, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

<u>/s/ Paul G. Karlsgodt</u>
Paul G. Karlsgodt, WSBA # 40311
1801 California Street, Suite 4400
Denver, CO 80202
T: 303.764.4013
F: 303.861.7805
E: PKarlsgodt@bakerlaw.com

*Attorney for Defendant*
*Green Diamond Resource Company*

# CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I electronically filed the foregoing NOTICE OF REMOVAL with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for plaintiffs. I further certify that I emailed the filings to the below counsel on June 3, 2024.

Kaleigh N. Boyd
TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth A venue, Suite 1700
Seattle, Washington 98101-3147
T: 206.682.5600
kboyd@tousley.com

　　　　　　　　　　　　　　　　　　　　*/s/ Paul G. Karlsgodt*
　　　　　　　　　　　　　　　　　　　　Paul G. Karlsgodt